IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZENIA BROWNE, | : | |
| Plaintiff, | : | No. |
| | : | |
| vs. | : | |
| | : | |
| LUTHERAN MANOR OF | : | |
| THE LEHIGH VALLEY, INC. | : | |
| | : | |
| Defendant. | : | Jury Trial Demanded |

## COMPLAINT

Plaintiff, Zenia Browne ("Mrs. Browne"), by through her undersigned legal counsel, Hoffman & Hlavac, sets forth the within Complaint against Defendant, Lutheran Manor of the Lehigh Valley, Inc. ("Lutheran Manor"), and in support thereof, avers the following:

### Nature of Action

1. This is an action for Defendant's violation of 31 U.S.C. § 3730[1] ("Section 3730) based on Defendant's termination of Mrs. Browne's employment after Defendant perceived that Mrs. Browne participated in complaints made to Defendant about issues relating to mismanagement of federal funding by Defendant's Executive Director, Courtney Doheny. These perceived disclosures are protected under Section 3730 and Defendant's actions constitute whistleblower retaliation in violation of Section 3730. An investigation and subsequent report into this matter was conducted by the U.S. Department of Housing and Urban Development, Office of Inspector General ("OIG") in which Mrs. Browne was a witness.

### The Parties

2. Plaintiff, Zenia Browne, is an adult individual residing at 1072 5th Street, Catasauqua, Lehigh County, PA 18032.

---

[1] *See* 31 U.S.C. § 3730(h)(1).

1

3. Defendant, Lutheran Manor of the Lehigh Valley, Inc., is a Pennsylvania not-for-profit corporation with a principal place of business located at 2085 Westgate Dr. Bethlehem, Lehigh County, Pennsylvania 18017-7412.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action raises a Federal Question as it arises under federal law.

6. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in Lehigh County, Pennsylvania, which is situated in the Eastern District of Pennsylvania.

**Factual Background**

7. Defendant, Lutheran Manor of the Lehigh Valley, Inc. (hereinafter "Lutheran Manor"), is a non-profit affordable housing apartment community located in Bethlehem, Pennsylvania, for residents aged sixty-two and older.

8. Plaintiff, Zenia Browne (hereinafter "Mrs. Browne" or "Plaintiff"), was hired by Lutheran Manor on June 5, 2019, as an Administrative Assistant.

9. Lutheran Manor's residents receive rental assistance through Section 8 of the U.S. Housing Act.

10. Lutheran Manor's most recent Housing Assistance Payments contract ("HAP contract") with the U.S. Department of Housing and Urban Development ("HUD") began on April 1, 2010, for a period of twenty (20) years.

11. Lutheran Manor received three and a half million dollars ($3,500,000) in total revenue in 2019 and 2020 that was derived from federally-funded tenant assistance payments.

12. Lutheran Manor is a recipient of federal funds.

13. Lutheran Manor is governed by a fifteen (15) person volunteer board.

14. In July of 2010, Lutheran Manor's Board of Directors hired Courtney Doheny (hereinafter "Ms. Doheny") as its Executive Director.

15. In her role, Mrs. Browne reported directly to Ms. Doheny and was responsible for providing support for Lutheran Manor's rental office.

16. An anonymous employee sent Lutheran Manor an anonymous email informing Lutheran Manor's Board that Ms. Doheny was "possibly stealing and/or embezzling money from [Lutheran Manor] and mismanaging the documents of residents."

17. This anonymous email included several allegations directed at Ms. Doheny's alleged mismanagement of Lutheran Manor's federal funds.

18. On April 12, 2021, the Lutheran Manor's Board met with Ms. Doheny to discuss the anonymous email. Ms. Doheny denied the allegations of wrongdoing made in the anonymous email.

19. Ms. Doheny later told the U.S. Department of Housing and Urban Development's Office of Inspector General that she suspected Mrs. Browne and another employee to be the source of the allegations against her.

20. The anonymous employee then sent Lutheran Manor a second anonymous email stating that the Lutheran Manor's petty cash receipts and invoices had been removed from the filing cabinet where they were kept.

21. The anonymous employee sent Lutheran Manor a third anonymous email containing further allegations of fraudulent claims.

22. On April 21, 2021, Lutheran Manor decided the use of Lutheran Manor's credit cards should be suspended, and that an independent auditor should investigate the concerns raised in the anonymous emails.

23. On May 3, 2021, the anonymous employee sent Lutheran Manor a fourth anonymous email about "privacy" and "security" raised by [Ms. Doheny] asking staff members for their passwords to Lutheran Manor's devices.

24. Thereafter, it is believed that the anonymous employee identified herself as the source of the anonymous emails to Lutheran Manor Board member, Bill Matz.

25. On May 5, 2021, it is believed that Lutheran Manor Board members, Bill Matz and Ray Hittinger, met with the anonymous employee to discuss the concerns she had raised in her anonymous emails. Minutes from a May 12, 2021, Lutheran Manor Executive Committee meeting include a summary of this May 5, 2021, meeting and indicate that the discussion on that day addressed the concerns the anonymous employee raised in her first anonymous email. According to the anonymous employee, Bill Matz told her during this meeting that her identity and the information she was providing would remain confidential.

26. Bill Matz later relayed that the anonymous employee told him that during this meeting that she was reporting information on behalf of Mrs. Browne. Bill Matz told the OIG: "I had a feeling that they were both involved" in raising the allegations against [Ms. Doheny] "but that – [the anonymous employee] became . . . the point person or – the voice of the situation."

27. At no time did Mrs. Browne actually know that the anonymous employee was attaching Mrs. Browne's name to her complaints and/or alleging that she was reporting information on behalf of Mrs. Browne until after the anonymous employee and Mrs. Browne were terminated. Any mention of Mrs. Browne being involved in any way in the anonymous emails and

4

complaints made by the anonymous employee was this employee's sole attempt to bolster their own allegations.

28. On May 12, 2021, the Board of Directors approved a motion for a third-party company to perform an independent audit of Lutheran Manor's credit card activity from January 2020 to April 2021, its corporate account usage and petty cash activity during this same time period, and its use of a third-party company.

29. On May 27, 2021, the Board approved a motion to hire a private investigator to address [the anonymous employee's] concerns and to suspend Ms. Doheny "with pay and without prejudice" during the investigation.

30. On June 2, 2021, a Board member of Lutheran met with Ms. Doheny as she began her suspension during the pendency of the investigation into the anonymous employee's allegations.

31. A June 3, 2021, email from a Board member of Lutheran Manor to another Board member, stated that Ms. Doheny "shared some things [during this June 2, 2021] meeting concerning [the] behavior of the two employees who brought forth allegations. But, that is a problem for another day that we have to tread lightly on."

32. A Board member of Lutheran Manor told the OIG that the behavior Ms. Doheny raised during the June 2 meeting was that she felt that certain employees may have been watching her. Another Board member of Lutheran Manor by contrast, told the OIG that the behavior raised by Ms. Doheny asserted that Mrs. Browne and the anonymous employee "weren't playing as part of [the] team. They seemed to be more isolated from the other employees. They . . . just didn't seem to be happy employees working [for Lutheran Manor]."

33. The Private Investigator hired by the Defendant Board interviewed Defendant employees during June and July of 2021, and that Ms. Doheny told the Private Investigation Company on June 18, 2021, that she believed Mrs. Browne was one of the sources of the allegations against her.

34. After reviewing the reports submitted by the third-party audit company and the Private Investigation Company, Lutheran Manor's Board of Directors found that the allegations against Ms. Doheny were unfounded, and she was reinstated.

35. Subsequently, the anonymous employee continued to make reports to the Lutheran Manor regarding Ms. Doheny's retaliatory behavior towards her based on her knowledge that she was connected to the allegations made to Lutheran Manor.

36. On July 28, 2021, a Board member of Lutheran Manor sent an email stating:

> My observation is that the stressful work environment is being created by resentment towards [Ms. Doheny] by the staff for their actions. They are the individuals who created the environment that they feel, not [Ms. Doheny]. It may be time to talk to both employees, tell them to knock it off, and/or suggest they look for jobs elsewhere. We may have to sweeten [the] pot to get them to leave, but we have all put way too much time into this, and we know their perspective is not correct.

37. On September 9, 2021, Ms. Doheny met separately with the anonymous employee who made the complaints and Mrs. Browne. In these meetings, Ms. Doheny read from a pre-written script that stated that, although she knew that both employees had made the allegations about her to Lutheran Manor and she would not retaliate against them.

38. On November 5, 2021, Ms. Doheny provided Mrs. Browne a memorandum stating that Lutheran Manor was terminating her employment. A true and correct copy of this November 5, 2021, memorandum is incorporated by reference and attached hereto as Exhibit "A."

39. The November 5, 2021, memorandum clearly states that Mrs. Browne was terminated as a result of her perceived protected activity of reporting false and fraudulent claims and the mismanagement of government funds. *See* Exhibit A.

40. The pertinent part of this November 5, 2021, memorandum states:

- Since the conclusion of the Board of Directors' investigation of your complaints earlier this year and my reinstatement, you have created an uncomfortable work environment for your fellow employees with your behaviors and attitudes.

- You are clearly not satisfied working here following the Board's decision to retain me as Executive Director and Lutheran Manor has now decided that it is not interested in continuing its at-will employment relationship with you. See Exhibit A.

41. Mrs. Browne was a witness in the OIG investigation.

42. Mrs. Browne assisted the government in investigating False Act claims that could have led to an action under the Act.

## COUNT I

### Retaliation in Violation of 31 U.S.C. § 3730(h)(1)

43. Plaintiff incorporates by reference paragraphs 1 through 42 of the Plaintiff's Complaint as though the same were more fully set forth herein at length.

44. 31 U.S.C. § 3730(h) protects employees from retaliation for their efforts to assist in combating fraud against the government.

45. Defendant is a recipient of federal funds and thus subject to 31 U.S.C. § 3730.

46. Defendant perceived Plaintiff as making disclosures that were protected by 31 U.S.C. § 3730.

47. Mrs. Browne did make disclosures to Defendant and the U.S. government as part of an investigation, preparation, or other pursuit of a qui-tam action or to stop violations of the False Claims Act.

48. On November 5, 2021, Mrs. Browne received notification from Ms. Doheny of Lutheran Manor, on behalf of Defendant, that her employment was being immediately terminated (the "termination") for her unhappiness with the Defendant's investigation based on her protected disclosures.

49. Mrs. Browne's performance was not cited as a reason for her termination rendering any other stated reasons for the Termination of Mrs. Browne implausible and pretextual.

50. The plain language of the November 5, 2021, memorandum clearly links the reasoning behind Mrs. Browne's termination to her protected conduct or perceived protected conduct.

51. The only other employee who was terminated during this time was the anonymous employee who had sent the anonymous emails to Defendant about Mrs. Doheny. This anonymous employee was terminated on the same day as the Plaintiff for the same reasons as the Plaintiff.

52. Plaintiff's termination constitutes an act of retaliation by Defendant against Plaintiff in violation of 31 U.S.C. § 3730(h)(1).

53. Mrs. Browne has sustained special damages as a result of her illegal termination, including, but not limited to, emotional distress, back pay, front pay, and the costs associated with obtaining new employment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendant as follows:

(a) Double back pay;

    (b)    Interest on the double back pay;

    (c)    Compensation for special damages;

    (d)    Reinstatement or front pay;

    (e)    Attorneys' fees;

    (f)    Costs of litigation; and

    (g)    Any and all relief, at law or in equity, that this Court may deem appropriate or proper.

HOFFMAN & HLAVAC

By: *s/Steven E. Hoffman*
Steven E. Hoffman, Esquire
Attorney I.D. No. 63911
1605 North Cedar Crest Blvd., Ste. 517
Allentown, PA 18104
Ph#484-408-6001 Fax#484-408-6018
shoffman@hhe-law.com
*Attorney for Plaintiff*

# EXHIBIT "A"

## CONFIDENTIAL

## MEMORANDUM

TO:     **Zenia Browne**
FROM:   Courtney Doheny, Executive Director
DATE:   November 5, 2021


- We are meeting with you today to tell you that Lutheran Manor has decided to end its employment relationship with you effective today, November 5, 2021.
- Since the conclusion of the Board of Directors' investigation of your complaints earlier this year and my reinstatement, you have created an uncomfortable work environment for your fellow employees with your behavior or attitudes.
- You are clearly not satisfied working here following the Board's decision to retain me as Executive Director and Lutheran Manor has now decided that it is not interested in continuing its at-will employment relationship with you.
- We have prepared a severance offer which is detailed in the document we are giving you today. You will have ten calendar days to consider the agreement and sign it. If you do not accept the agreement within the ten-day consideration period, it will be withdrawn and you will not receive any of the severance benefits or Mini COBRA premium payments provided for in the Release.
- Your pay ends today. Your health insurance benefits will continue through the end of the month and then, if you sign the agreement, Lutheran Manor will pay your Mini COBRA premiums for three months (December, January, and February).
- You may return to your work area after this meeting to collect your personal belongings under the supervision of myself and a board member. As an alternative, we will arrange for you to collect your personal belongings at another time when most other employees are not working.
- This decision to end your employment is final and Lutheran Manor is not open to any further discussion about it with you.

1

- I would like to now highlight certain aspects of the Waiver and Release Agreement ("Release") that Lutheran Manor is offering to you today concerning your separation from employment.
- Lutheran Manor is offering you the following special separation package:
  - If you accept the severance offer and sign the Release, Lutheran Manor will pay you a total severance payment of $9,374.00. This severance benefit will be paid in two equal portions of $4,687.00 each. The first payment will be made 10 days after you sign the Release. The second will be paid on May 5, 2022. Both severance payments are conditioned upon you signing the Release and abiding by certain restrictions on your conduct which are included in the Release from today forward, including but not limited to not defaming or disparaging Lutheran Manor in communications with residents or others (see details in Section 10), not disclosing confidential information (see details in Section 11), maintaining confidentiality about the severance offer and agreement (see details in Section 12), and not bringing any lawsuit against Lutheran Manor (see details in Section 6).
  - Your health, vision and dental insurance will continue through the end of November. If you sign the Release and elect Mini COBRA continuation, Lutheran Manor will pay your Mini COBRA continuation premiums for December, January, and February. Beginning in March 2022 and for the rest of the Mini COBRA coverage continuation period, you will be responsible to pay the premiums.
  - Your participation in Lutheran Manor's other benefit plans ended on November 5, 2021.
  - If you apply for unemployment compensation benefits, when contacted by the Bureau of Unemployment Compensation, Lutheran Manor will respond that your employment was ended by Lutheran Manor for reasons that Lutheran Manor does not believe qualify as willful misconduct under the unemployment compensation law. Lutheran Manor expects that you will qualify to receive unemployment compensation benefits but that decision will be made by the Bureau of Unemployment

Compensation, not by Lutheran Manor. Lutheran Manor will not appeal any decision granting you benefits or oppose any appeal by you if you are denied benefits.
- Lutheran Manor will respond to any written requests for an employment reference by stating only the title of the position you held while working for Lutheran Manor and the starting and ending dates of your employment. Lutheran Manor will not offer any information to persons seeking employment references about the reasons for your termination. All requests for references must be directed to Courtney Doheny.

Respectfully,

*[signature: Courtney Doheny]*

Courtney L. Doheny
Executive Director