**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZENIA BROWNE | : |
| | : |
| Plaintiff | : |
| v. | : Civil Action No. 5:23-cv-04278-JMG |
| | : |
| LUTHERAN MANOR OF THE LEHIGH | : |
| VALLEY, INC. | : JURY TRIAL DEMANDED |
| | : |
| Defendant | : |

---

**DEFENDANT'S BRIEF IN SUPPORT OF ITS**
**RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

**WARD LAW, LLC**

*/s/ Christopher M. Curci*
Christopher M. Curci, Esq. (309820)
Ward Law, LLC
One Penn Center
1617 JFK Blvd., Suite 500
Philadelphia, PA 19103
p: 215-647-6603
f: 267-350-8774
ccurci@thewardlaw.com
*Attorneys for Defendant,*
Date: <u>January 29, 2024</u>                    *Lutheran Manor of the Lehigh Valley, Inc.*

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT .........................................................................1

II.    PROCEDURAL HISTORY...............................................................................1

III.   STATEMENT OF FACTS ..............................................................................2

IV.   ARGUMENT ..................................................................................................8

    A.   Standard of Review ..............................................................................8

    B.   Purpose of the False Claims Act and *Qui Tam* Actions ...........................9

    C.   Elements of a "Retaliation" Claims Under § 3730(h)(1) of the False Claims Act .......................................................................................10

    D.   The Complaint Fails to Allege Facts that Plaintiff Engaged in "Protected Conduct" Under § 3730(h)(1) of the False Claims Act...............................11

         1.   Plaintiff's Complaint fails to allege facts showing that Lutheran Manor made a "false statement" to the United States Government or engaged in a "fraudulent course of conduct" towards the United States Government. .....................................11

         2.   Plaintiff's Complaint fails to allege facts showing that Lutheran Manor made a false statement to the United States Government "that was material" and upon which the United States Government relied in providing Section 8 housing funds to Lutheran Manor. .....................................................14

         3.   Plaintiff's Complaint is a failed effort to recast her whistleblower retaliation claims under the National Defense Authorization Act as a retaliation claim under the FCA. .............................16

V.     CONCLUSION................................................................................................20

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 8

*Campbell v. District of Columbia*, 972 F.Supp.2d 38 (D.D.C. Sept. 23, 2013) ........................ 12

*Carnahan v. Sterling Med. Corp.*, 2014 WL 4924890 ................................................... 9, 13

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)................................................. 8

*Frett v. Howard Univ.*, 24 F. Supp. 3d 76 (D.D.C. 2014) ............................................... 13

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187 (3d Cir. 2009)...................................... 8

*Lanahan v. Cnty. of Cook*, 41 F.4th 854 (7th Cir. 2022) ........................................... 13, 15

*Lillie v. ManTech Int'l Corp.*, 837 F. App'x 455 (9th Cir. 2020).................................... 10, 11, 19

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ....................................................... 7, 9

*Morrow v. Balaski*, 719 F.3d 160 (3d. Cir. 2013)....................................................... 8

*Polansky v. Exec. Health Res. Inc*, 17 F.4th 376 (3d Cir. 2021) ................................... 10

*U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993) ....................................... 9

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
    812 F.3d 294 (3d Cir. 2016).................................................................. 9, 13, 19

*United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890 (9th Cir. 2017) ................. 10, 11

*United States ex rel. Escobar v. Universal Health Servs., Inc.*,
    842 F.3d 103 (1st Cir. 2016)................................................................... 15

*United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006).................... 11

*United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481 (3d Cir. 2017)................... 15, 17

*United States v. McNinch*, 356 U.S. 595 (1958)......................................................... 9

*Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016) ................................. 14, 17

*Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100 (3d Cir. 2018)............................. 20

*Wheeler v. Wheeler*, 639 Fed. Appx. 147 (3d Cir. 2016) ........................................... 8, 19

### Statutes

31 U.S.C. § 3729(b)(4) .................................................................................... 14

31 U.S.C. § 3730(h)(1) ............................................................................. passim

41 U.S.C. § 4712......................................................................................... 6, 16, 18

### Rules

Fed. R. Civ. P. 12(b)(6)................................................................................... 2

Fed. R. Civ. P. 12(d) ..................................................................................... 7

Fed. R. Civ. P. 9(b) ...................................................................................... 9

## I.   <u>PRELIMINARY STATEMENT</u>

Plaintiff, Zenia Browne's ("Plaintiff"), Complaint must be dismissed because it fails to allege facts – rather than mere legal conclusions – showing that defendant, Lutheran Manor of the Lehigh Valley, Inc. ("Lutheran Manor" or "Defendant"), made a materially false statement to the United States Government, upon which the government relied in providing Section 8 housing funds to Lutheran Manor.  Instead of alleging a materially false or fraudulent claim made by Lutheran Manor to the United States Government, the Complaint generally alleges various acts of perceived "mismanagement" and "waste" of federal Section 8 housing funds regarding Lutheran Manor's Executive Director possibly stealing or embezzling money from Lutheran Manor, mismanaging the documents of residents, petty cash receipts and invoices being removed from the filing cabinet, and asking Lutheran Manor employees for their passwords to Lutheran Manor's devices.  Compl. ¶¶ 1, 16, 17, 20, 23 [ECF No. 1].  Even assuming those allegations to be true, such factual allegations fail to state a *prima facie* "retaliation" claim under § 3730(h)(1) of the False Claims Act.  For the reasons set forth herein, Plaintiff's Complaint must be dismissed.

## II.   <u>PROCEDURAL HISTORY</u>

Plaintiff initiated this action by filing a Complaint against Lutheran Manor with this Honorable Court on November 3, 2023.  ECF No. 1.  The Complaint was served on Lutheran Manor on December 7, 2023.  ECF No. 7.  The Complaint brings one count of retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h)(1).  ECF No. 1.

On December 14, 2023, this Honorable Court approved a stipulation by and between counsel extending Lutheran Manor's time to respond to the Complaint until January 28, 2024. ECF No. 4.  On January 18, 2024, counsel for the parties held a telephone conference to discuss Lutheran Manor's intent to file this Motion to Dismiss in accordance with the Policies and

Procedures of the Honorable John M. Gallagher.  *See Certification of Christopher M. Curci, Esq.* (Jan. 29, 2024) filed herewith.  The parties were unable to reach a resolution that eliminated the need for this Motion to Dismiss, and therefore Lutheran Manor timely files the within motion seeking dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

III.    **STATEMENT OF FACTS**[2]

Lutheran Manor is a Pennsylvania not-for-profit corporation with a principal place of business located at 2085 Westgate Drive, Bethlehem, Lehigh County, PA 18017.  Compl. ¶ 2 [ECF No. 1].  Lutheran Manor is a non-profit affordable housing community for residents aged sixty-two and older and receives rental assistance through Section 8 of the United States Housing Act.  *Id.* ¶¶ 7, 9.  Lutheran Manor's most recent Housing Assistance Payments contract ("HAP Contract") with the United States Department of Housing and Urban Development ("HUD") began on April 1, 2010, for a period of twenty (20) years.  *Id.* ¶ 10.  Lutheran Manor received three and one-half million dollars ($3,500,000) in total revenue in 2019 and 2020 that was derived from federally funded tenant assistance payments and was a recipient of federal funds.  *Id.* ¶¶ 11, 12.  Lutheran Manor is governed by a fifteen (15) person volunteer Board of Directors which hired Courtney Doheny ("Ms. Doheny") as its Executive Director in July of 2010.  *Id.* ¶¶ 13, 14.

---

[1] On January 26, 2024, the Honorable John M. Gallagher issued an Order granting Defendant's Motion to Exceed Page Limitations [ECF No. 8], allowing Defendant's Brief in Support of Defendant's Motion to Dismiss, inclusive of its Table of Contents, Table of Authorities, and any exhibits attached hereto, to exceed twenty (20) pages but not more than thirty (30) pages.  ECF No. 9.

[2] Defendant refutes many of the allegations in Plaintiff's Complaint, but assumes for purposes of this motion only, as the Court must, that all well-pleaded factual allegations in the Complaint are true.

Plaintiff is an individual residing at 1072 5th Street, Catasauqua, Lehigh County, PA 18032. *Id.* ¶ 2.  Plaintiff was hired by Lutheran Manor as an Administrative Assistant on June 5, 2019.  *Id.* ¶ 8.  In her role, Plaintiff reported directly to Ms. Doheny and was responsible for providing support for Lutheran Manor's rental office.  *Id.* ¶ 15.

On a date not specified in the Complaint, an "anonymous employee" (not Plaintiff) sent Lutheran Manor an anonymous email informing Lutheran Manor's Board that Ms. Doheny was "possibly stealing and/or embezzling money from [Lutheran Manor] and mismanaging the documents of residents."  *Id.* ¶ 16.  This anonymous email included several allegations directed at Ms. Doheny's alleged "mismanagement" of Lutheran Manor's federal funds.  *Id.* ¶ 17.  On April 17, 2021, the Lutheran Manor Board President met with Ms. Doheny to discuss the anonymous email and Ms. Doheny denied the allegations of wrongdoing in the anonymous email.  *Id.* ¶ 18.

On a date not specified in the Complaint, the anonymous employee then sent Lutheran Manor a second anonymous email stating that Lutheran Manor's petty cash receipts and invoices had been removed from the filing cabinet where they were kept.  *Id.* ¶ 20.  The Complaint alleges that the anonymous employee sent Lutheran Manor a third anonymous email containing "further allegations of fraudulent claims" – although, notably, the Complaint does not plead any facts with particularity regarding these alleged "fraudulent claims."  *See Id.* ¶ 21.

On April 21, 2021, Lutheran Manor decided that the use of Lutheran Manor's credit cards should be suspended, and that an independent auditor should investigate the concerns raised in the anonymous email.  *Id.* ¶ 22.  On May 3, 2021, the anonymous employee sent Lutheran Manor a fourth anonymous email about "privacy" and "security" raised by Ms. Doheny asking staff members for their passwords to Lutheran Manor's devices.  *Id.* ¶ 23.  The Complaint alleges that,

thereafter, the anonymous employee (not Plaintiff) identified herself as the source of the anonymous emails to a Lutheran Manor Board Member, Bill Matz. *Id.* ¶ 24.

At no time did Plaintiff know that the anonymous employee was attaching Plaintiff's name to the anonymous employee's complaints, or that the anonymous employee was alleging that she [the anonymous employee] was reporting information on behalf of Plaintiff, until after Lutheran Manor terminated the employment of both the anonymous employee and Plaintiff on November 5, 2021. *Id.* ¶¶ 27, 38. Any mention by the anonymous employee of Plaintiff being involved in any way was the anonymous employee's sole attempt to bolster the anonymous employee's own allegations. *Id.* ¶ 27.

On May 5, 2021, Lutheran Manor Board Members Ray Hittinger and Bill Matz met with the anonymous employee to discuss the concerns she raised in her anonymous emails. *Id.* ¶ 25. On a date unspecified in the Complaint, Bill Matz later relayed that the anonymous employee told him that she stated she was reporting information on behalf of Plaintiff. *Id.* ¶ 26.

On May 12, 2021, Lutheran Manor's Board of Directors approved a motion for a third-party company to perform an independent audit of Lutheran Manor's credit card activity from January 2020 to April 2021, its corporate account usage and petty cash activity during this same time period, and its use of a third-party company. *Id.* ¶ 28. On May 27, 2021, the Board of Directors approved a motion to hire a private investigator to address the anonymous employee's concerns and to suspend Ms. Doheny with pay, and without prejudice, during the investigation. *Id.* ¶ 29.

On June 2, 2021, a Lutheran Manor Board member met with Ms. Doheny. *Id.* ¶ 30. On June 3, 2021, an email from a Lutheran Manor Board member to another Board member stated that Ms. Doheny, "shared some things [during this June 2, 2021 meeting] concerning [the]

behavior of the two employees who brought forth allegations.  But, that is a problem for another day that we will have to tread lightly on." *Id.* ¶ 31.

In June and July 2021, the private investigator hired by Lutheran Manor interviewed Lutheran Manor employees, and on June 18, 2021, Ms. Doheny told the private investigator that she believed Plaintiff was one of the sources of the allegations against her. *Id.* ¶ 33.

After reviewing the reports submitted by the third-party audit company and the private investigator, Lutheran Manor's Board of Directors found that the allegations against Ms. Doheny were unfounded and Ms. Doheny was reinstated.  *Id.* ¶ 34.  Subsequently, the anonymous employee continued to make reports to the Lutheran Manor Board regarding Ms. Doheny's allegedly retaliatory behavior towards the anonymous employee based on Ms. Doheny's knowledge that the anonymous employee was connected to the allegations made against Lutheran Manor. *Id.* ¶ 35.  On July 28, 2021, a Board member of Lutheran Manor sent an email stating,

> My observation is that the stressful work environment is being created by resentment towards [Ms. Doheny] by the staff for their actions.  They are the individuals who created the environment that they feel, not [Ms. Doheny].  It may be time to talk to both employees, tell them to knock it off, and/or suggest they look for jobs elsewhere.  We may have to sweeten [the] pot to get them to leave, but we have all put way too much time into this, and we know their perspective is not correct.

*Id.* ¶ 36.

On September 9, 2021, Ms. Doheny met separately with the anonymous employee and Plaintiff, and read from a prewritten script that stated, although Ms. Doheny knew that both employees had made the allegations about her to Lutheran Manor, she would not retaliate against them. *Id.* ¶ 37.

5

On November 5, 2021, Ms. Doheny provided Plaintiff a memorandum stating that Lutheran Manor was terminating Plaintiff's employment, a copy of which is attached as Exhibit "A" to the Complaint. *Id.* ¶ 38.

On November 15, 2021, counsel for the Plaintiff, Steven Hoffman, Esq., sent a letter Lutheran Manor, a copy of which is attached hereto as Exhibit "A" (the "Hoffman Letter"), stating that Lutheran Manor had unlawfully terminated the employment of Plaintiff and the anonymous employee on November 5, 2021, in retaliation for Plaintiff and the anonymous employee making claims that Lutheran Manor had engaged in a "gross mismanagement" and "gross waste" of federal funds. Ex. A, p.1, first paragraph. The Hoffman Letter further stated that Plaintiff and the anonymous employee were "fully prepared to begin the whistleblower process with HUD's Office of Inspector General." *Id.* at p. 2, first full paragraph.[3]

As stated in the Hoffman Letter, *after* the termination of their employment, Plaintiff and the anonymous whistleblower filed whistleblower complaints with the HUD Office of Inspector General ("OIG") under the National Defense Authorization Act (the "NDAA"), which prohibits retaliation against employees for disclosing "information that the employee reasonably believes is evidence of **gross mismanagement** of a Federal fund or grant, or **gross waste** of Federal funds…." 41 U.S.C. § 4712 (emphasis added).

On a date not specified in the Complaint, Plaintiff was a witness in the HUD OIG investigation. Compl. ¶ 41 [ECF No. 1]. On a date not specified in the Complaint, Ms. Doheny told HUD's OIG that she suspected Plaintiff and another employee to be the source of the allegations against her. *Id.* ¶ 19. On a date not specified in the Complaint, a Board member told

---

[3] Consistent with the Complaint, the anonymous employee's name has been redacted from Ex. A.

the HUD OIG that the behavior Ms. Doheny raised during the June 2nd meeting was that she felt certain employees may be watching her.  *Id.* ¶ 32.  On a date not specified in the Complaint, another Board member told the HUD OIG that the behavior raised by Ms. Doheny asserted that Plaintiff and the anonymous employee "weren't playing as part of the team.  They seemed to be more isolated from the other employees.  They… just didn't seem to be happy employees working [for Lutheran Manor]."  *Id.*  On a date not specified in the Complaint, Bill Matz told the HUD OIG: "I had a feeling that they were both involved [referring to Plaintiff and the anonymous employee]" in raising allegations against Ms. Doheny, "but that – [the anonymous employee] became… the point person or – the voice of the situation."  *Id.* ¶ 26.

On December 13, 2023, HUD issued a "Final Agency Action in OIG Case Number 2022SU0011449C," a copy of which is attached hereto as Exhibit "B" (the "HUD Final Determination").  Per the HUD Final Determination, the Secretary of HUD determined that Plaintiff's "complaint of retaliation is not actionable under the provisions of 41 U.S.C. § 4712 [the NDAA]," and that Plaintiff has the right to proceed with a *de novo* action against Lutheran Manor under the NDAA in the United States District Court for the Eastern District of Pennsylvania within two years of the date of the HUD Final Determination.  Ex. B at p. 1, last paragraph.[4]

---

[4] Because the Complaint makes several allegations regarding the HUD OIG investigation (Compl. ¶¶ 1, 19, 26, 32 [ECF No. 1]) and alleges that Plaintiff was a "witness in the OIG investigation" as basis of her claim (Compl. ¶¶ 1, 41) [ECF No. 1]), the Court may properly consider Exs. A and B attached hereto.  The Court may consider "any undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice"); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").

Plaintiff now brings a Complaint in this Court against Lutheran Manor alleging one count of retaliation in violation of § 3730(h)(1) of the False Claims Act.  *See generally* Compl. [ECF No. 1].  Plaintiff's Complaint does *not* bring a whistleblower retaliation claim under the NDAA, 41 U.S.C. §4712.  *Id.*

## IV.    <u>ARGUMENT</u>

### A.    **Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Wheeler v. Wheeler*, 639 Fed. Appx. 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d. Cir. 2013)).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as any undisputedly authentic

---

Alternatively, should the Court determine that Exs. A and B are "outside the pleadings," pursuant to Fed. R. Civ. P. 12(d), if matters outside the pleadings are presented to and not excluded by the Court in a Rule 12(b)(6) motion, the Rule 12(b)(6) motion must be treated as one for summary judgment under Fed. R. Civ. P. 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

The Third Circuit has held that Fed. R. Civ. P. 9(b) applies to FCA actions, such that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 306–07 (3d Cir. 2016), citing Fed. R. Civ. P. 9(b). A plaintiff alleging fraud under the FCA must therefore support her allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story — that is, the who, what, when, where and how of the events at issue." *Id.* (internal citation omitted); *see also Carnahan v. Sterling Med. Corp.*, 2014 WL 4924890 (W.D. Pa. Sept. 30, 2014) (dismissing plaintiff's retaliation claim under § 3730(h)(1) of the FCA because the Complaint failed to comport with Fed. R. Civ. P. 9(b)'s particularity requirements).

### B.    Purpose of the False Claims Act and *Qui Tam* Actions

The term "qui tam" is short for "qui tam pro domino rege quam pro se imposo sequitur," which is interpreted as "who brings the action as well for the king as for himself." *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 746 (9th Cir. 1993).  The Third Circuit recently provided the following history and purpose of the False Claims Act ("FCA"),

> The False Claims Act has its roots in the Civil War, when "a series of sensational congressional investigations" uncovered widespread fraud by wartime contractors that had bilked the federal government by charging for "nonexistent or worthless goods." *United States v. McNinch*, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). In response, Congress not only prohibited the making of false claims to the Government, 31 U.S.C. § 3729(a)(1), and empowered the United States to seek civil remedies, id. § 3730(a); it also legislated a private enforcement mechanism, not unlike the bounty hunting common in the rough-and-tumble world of the mid-nineteenth century. That is, the statute permits private individuals, acting in the name of the Government, to assert FCA claims "for the person and

for the United States Government." Id. § 3730(b)(1). These relator-
initiated lawsuits, known as *qui tam* actions, effectively deputize
citizens to act as private attorneys general, compensated with a share
of the money recovered.1 See id. § 3730(d).

*Polansky v. Exec. Health Res. Inc*, 17 F.4th 376, 380 (3d Cir. 2021).

The FCA provides for a range of possible awards to a successful *qui tam* plaintiff, ranging

from less than 10 percent to as much as 30 percent of the proceeds of the *qui tam* claim. *Id.* at 747.

A successful relator also receives an amount for reasonable expenses, attorneys' fees and costs.

*Id.* citing § 3730(d)(1).

**C.**   **Elements of a "Retaliation" Claims Under § 3730(h)(1) of the False Claims Act**

Plaintiff's Complaint does not bring a *qui tam* action under the FCA. *See generally* Compl.

[ECF No. 1]. Rather, the Complaint alleges one count of retaliation in violation of § 3730(h)(1)

of the FCA. *Id.* Section 3730(h)(1) of the FCA states,

> Any employee, contractor, or agent shall be entitled to all relief
> necessary to make that employee, contractor, or agent whole, if that
> employee, contractor, or agent is discharged, demoted, suspended,
> threatened, harassed, or in any other manner discriminated against
> in the terms and conditions of employment because of lawful acts
> done by the employee, contractor, agent or associated others **in
> furtherance of an action under this section or other efforts to
> stop 1 or more violations of this subchapter.**

31 U.S.C. § 3730(h)(1) (emphasis added).

Thus, to plead a retaliation claim under § 3730(h)(1) of the FCA, Plaintiff must show: (1)

she engaged in protected conduct under the FCA; (2) her employer knew that she engaged in

protected conduct under the FCA; and (3) her employer discriminated against her because of her

protected conduct under the FCA. *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d

103, 110 (3d Cir. 2007); *Lillie v. ManTech Int'l Corp.*, 837 F. App'x 455, 457 (9th Cir. 2020),

citing *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 907 (9th Cir. 2017).

**D.      The Complaint Fails to Allege Facts that Plaintiff Engaged in "Protected Conduct" Under § 3730(h)(1) of the False Claims Act**

To show that she engaged in "protected conduct" under the FCA – the first element of a retaliation claim under § 3730(h)(1) of the FCA – Plaintiff must show that she made a claim of Lutheran Manor committing "fraud against the government."  837 F. App'x at 457, citing 862 F.3d at 908 and 31 U.S.C. § 3729.  "Fraud against the government" is (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that is material, and (4) that causes the government to pay out money or to forfeit money that it is due.  *Id.*, citing *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).  Here, Plaintiff's Complaint fails to allege any facts, rather than mere conclusions of law, showing that Plaintiff engaged in "protected conduct" under § 3730(h)(1) the FCA.  Therefore, Plaintiff's Complaint must be dismissed.

**1.      Plaintiff's Complaint fails to allege facts showing that Lutheran Manor made a "false statement" to the United States Government or engaged in a "fraudulent course of conduct" towards the United States Government.**

Plaintiff's Complaint fails to allege with particularity any facts that Plaintiff or the anonymous employee claimed that Lutheran Manor had obtained Section 8 housing via *fraud*, or a *fraudulent* course of conduct, on the federal government, such that Plaintiff or the anonymous employee sought to recoup the Section 8 funds on behalf of the government "in furtherance of" a *qui tam* action as required § 3730(h)(1)   Rather, the factual averments in the Complaint regarding the anonymous employee's alleged whistleblowing amount to allegations of "mismanagement" or "waste" of Lutheran Manor's funds, some of which had been received by Lutheran Manor via its HAP contract with HUD for Section 8 funding.

Specifically, the only material factual allegations in the Complaint related to any wrongdoing are the following:

11

- Lutheran Manor residents receive rental assistance through Section 8 of the U.S. Housing Act.  Compl. ¶ 9.

- Lutheran Manor's most recent HAP contract with HUD began on April 1, 2010 for a period of twenty (20) years.  Compl. ¶ 10.

- Lutheran Manor received three and one-half million dollars ($3,500,000) in total revenue in 2019 and 2020 that was derived from federally-funded tenant assistance payments.  Compl. ¶ 11.

- The anonymous employee alleged that Doheny was possibly stealing or embezzling money from Lutheran Manor and mismanaging the documents of residents; that petty cash receipts and invoices had been removed from the filing cabinet,; and that Doheny asked Lutheran Manor employees for their passwords to Lutheran Manor's devices.  Compl. ¶¶ 16, 17, 20, 23.[5]

These factual allegations of "mismanagement" fail to plead that Lutheran Manor made a materially false statement to the United States Government, upon which the government relied in awarding Section 8 housing funds to Lutheran Manor.  *See e.g. Campbell v. District of Columbia*, 972 F.Supp.2d 38, 47 (D.D.C. Sept. 23, 2013) (dismissing plaintiff's District of Columbia False Claims Act retaliation complaint, which mirrors the language of the FCA, and holding, "Although [plaintiff] may have suspected that the [HR department's contracts] were tainted by impropriety, disclosing wasteful procedures or practices ... does not amount to an investigation of false or fraudulent claims.").

---

[5] *See e.g.* Compl. ¶ 16 [ECF No. 1] ("An anonymous employee sent Lutheran Manor an anonymous email informing Lutheran Manor's Board that Ms. Doheny was 'possibly stealing and/or embezzling money from [Lutheran Manor] and mismanaging the documents of residents;" ¶ 17 ("This anonymous email included several allegations directed at Ms. Doheny's alleged mismanagement of Lutheran Manor's federal funds.'"); ¶ 20 ("The anonymous employee then sent Lutheran Manor a second anonymous email stating that Lutheran Manor's petty cash receipts and invoices had been removed from the filing cabinet where they were kept."); ¶ 23 (On May 3, 2021, the anonymous employee sent Lutheran Manor a fourth anonymous email about 'privacy' and 'security' raised by [Ms. Doheny] asking staff members for their passwords to Lutheran Manor's devices;").

The Complaint's only allegations of "false" or "fraudulent" statements made by Lutheran Manor to the United States Government are nothing more than bare-bones and conclusory. For instance, the Complaint makes the vague and conclusory allegation that the anonymous employee "sent Lutheran Manor a third anonymous email containing further allegations of fraudulent claims." Compl. ¶ 21. Yet, this allegation is devoid of any facts to identify what alleged "fraudulent" claims were made. *See U.S. ex rel. Moore & Co., P.A.*, 812 F.3d at 306–07 (applying Fed. R. Civ. P. 9(b)'s standard of pleading fraud with particularity, and stating that the plaintiff must support her allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story — that is, the who, what, when, where and how of the events at issue."); *see also Carnahan*, 2014 WL 4924890 (dismissing plaintiff's retaliation claim under § 3730(h) the FCA because the Complaint failed to comport with Fed. R. Civ. P. 9(b)'s particularity requirements.)

Merely using the word "fraud" in the Complaint is insufficient to plead a claim under the FCA; rather, the Plaintiff must plead actual facts. *See e.g. Lanahan v. Cnty. of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) ("We dismiss outright Relator's conclusory assertions that Cook County profited from 'reimbursement of WIC false claims' and that Hektoen was reimbursed '[d]espite the falsity of the underlying claims.' We are not obligated to accept 'sheer speculation, bald assertions, and unsupported conclusory statements' on a motion to dismiss."); *Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 87 (D.D.C. 2014) ("Although Frett used the word 'fraud' in her whistleblower complaint, her actual allegations did not describe any 'false or fraudulent claims' or even hint that Jones, PRM, or anyone else had 'submitted false records or demands for payment' that could lead to FCA liability").

Therefore, Plaintiff's Complaint must be dismissed because it fails to allege facts to show that Lutheran Manor made a "fraudulent" statement to the United States Government, which is an essential element of a retaliation claim under § 3730(h)(1) of the FCA.

> **2.  Plaintiff's Complaint fails to allege facts showing that Lutheran Manor made a false statement to the United States Government "that was material" and upon which the United States Government relied in providing Section 8 housing funds to Lutheran Manor.**

Plaintiff's Complaint also fails to meet the "materiality" standard for a retaliation claim under §3730(h)(1) of the FCA.  Even assuming that the Complaint alleges facts that constitute fraudulent activity under the FCA (it does not), the Complaint nonetheless fails to allege facts demonstrating that such actions were "material" to the United States Government's decision to award Section 8 housing funding to Lutheran Manor.

"A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 181 (2016).  The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.*  citing 31 U.S.C. § 3729(b)(4). The Supreme Court has further held,

> The materiality standard is demanding. The False Claims Act is not "an all-purpose antifraud statute," or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.* at 194 (internal citation omitted).

14

Following the Supreme Court's decision in *Universal Health Services*, the Third Circuit held, "[W]e now join the many other federal courts that have recognized the heightened materiality standard after *Universal Health Services*." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 492–93 (3d Cir. 2017) (dismissing the plaintiff's FCA complaint because the plaintiff failed to plead sufficient facts to show that the United States' payment decision was affected by the alleged fraud and citing cases from various jurisdictions holding same); *see also United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 111 (1st Cir. 2016) ("finding FCA violations material where those violations were 'as central to the bargain as the United States ordering and paying for a shipment of guns, only to later discover that the guns were incapable of firing.'").

Here, Plaintiff's Complaint fails to allege any facts establishing that the United States Government relied on a "material" fraudulent misrepresentation from Lutheran Manor in providing Section 8 funds to Lutheran Manor. Rather, the Complaint alleges a variety of perceived "mismanagement" in the form of Ms. Doheny possibly stealing or embezzling money from Lutheran Manor, mismanaging the documents of residents, petty cash receipts and invoices being removed from the filing cabinet, and Doheny asking Lutheran Manor employees for their passwords to Lutheran Manor's devices. Compl. ¶¶ 16, 17, 20, 23. The Complaint is utterly devoid of any facts to demonstrate that this alleged mismanagement – even if it rose to the level of a "false" or "fraudulent" claim to the government (which it does not) – was "material" such that United States Government's decision to award Lutheran Manor Section 8 funds was affected by such mismanagement. *See e.g. Lanahan v. County of Cook, C.A.7 (Ill.)*, 41 F.4th 854 (7th Cir. 2022) (even if relator in *qui tam* action adequately pleaded the falsity of county's expense reports to Centers for Disease Control and Prevention (CDC) for federal grant funds related to H1N1

influenza grant, relator failed to allege that the expense reports were linked to any government payments, and thus failed to state claim against county department of public health under the FCA for knowingly presenting a false or fraudulent claim for payment or approval to the government; complaint was entirely silent as to the purpose of the expense report, how the CDC used such reports, or whether they were a prerequisite to government reimbursement.).

Therefore, Plaintiff's Complaint must be dismissed because, even if the Complaint alleges facts that amounted to fraudulent activity under the FCA (it does not), the Complaint nonetheless fails to allege facts demonstrating that such fraudulent activity was "material" to the United States Government's decision to award Section 8 housing funding to Lutheran Manor.

### 3. Plaintiff's Complaint is a failed effort to recast her whistleblower retaliation claims under the National Defense Authorization Act as a retaliation claim under the FCA.

Lastly, Plaintiff's Complaint is a failed effort to recast her whistleblower retaliation claims originally brought under the National Defense Authorization Act ("NDAA") as a retaliation claim under § 3730(h)(1) the FCA.  The FCA is distinguishable from the whistleblower protections provided under the NDAA, 41 U.S.C. § 4712, enacted on January 2, 2013.  The NDAA prohibits retaliation against an employee for disclosing information that she "reasonably believes is evidence of **gross mismanagement** of a Federal contract or grant, a **gross waste** of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant."  41 U.S.C. § 4712(a) (emphasis added).  Conversely, Section 3730(h)(1) of the FCA prohibits retaliation against whistleblower's who bring allegations of **fraud** against the government in furtherance of a *qui tam* action, requiring that the whistleblower allege that a government contractor committed **fraud** that

16

was material to the United State Government's award of federal funds to the contractor.  31 U.S.C. § 3730(h)(1); *Universal Health Servs.*, 579 U.S. 176; *United States ex rel. Petratos*, 855 F.3d 481.

Here, the Complaint alleges the threadbare legal conclusion that Plaintiff "did make disclosures to Defendant and the U.S. government as part of an investigation, preparation, or other pursuit of a *qui tam* action or to stop violations of the False Claims Act."  Compl. ¶ 47 [ECF No. 1].  The Complaint also vaguely alleges that Plaintiff "was a witness in the OIG investigation" and that Plaintiff "assisted the government in investigating False Claims Act claims that could have led to an action under the [False Claims] Act."  *Id.* ¶¶ 1, 41, 42.  **However, the Complaint does not state any facts regarding what "disclosures" Plaintiff made to Lutheran Manor or the United States Government in pursuit of a *qui tam* action, nor does the Complaint state the dates on which Plaintiff "was a witness in the OIG investigation," nor does it state the dates on which Plaintiff "assisted the government in investigating False Claims Act claims."**  *See generally* Compl. (being completely devoid of any such factual allegations).  Rather, at most, the Complaint makes reference to Plaintiff, Ms. Doheny, and Lutheran Manor Board Members making statements to HUD's OIG on unspecified dates.  *Id.* ¶¶ 1, 19, 26, 32, 41.

In truth – although the dates are not stated in the Complaint – the HUD OIG investigation referenced in the Complaint regarding Plaintiff's whistleblower retaliation claim under the NDAA occurred *after* Lutheran Manor terminated the employment of Plaintiff and the anonymous employee.  *See* Hoffman Letter, dated Nov. 15, 2021, Ex. A at p. 2, first full paragraph (dated ten days after Lutheran Manor terminated Plaintiff and the anonymous employee's employment on Nov. 5, 2021, and stating, "My clients are fully prepared to begin the whistleblower process with HUD's Office of Inspector General.").

Moreover, the HUD OIG investigation was not "in pursuit of a *qui tam* action under the False Claims Act" as baldly alleged in the Complaint, nor did Plaintiff "assist the government in investigating False Claims Act claims" as baldly alleged.  Compl. ¶¶ 1, 42, 47.  Rather, the HUD OIG investigation was in furtherance of a whistleblower retaliation claim under § 4712 of the NDAA for alleged **gross mismanagement** and **waste** of federal funds.  As stated in the HUD Final Determination, the Secretary of HUD determined that Plaintiff's "complaint of retaliation is not actionable under the provisions of 41 U.S.C. § 4712 [the NDAA]" because Lutheran Manor's HAP contract at issue predates the enactment of  the NDAA, 41 U.S.C. § 4712, and has not been modified to incorporate the statute.  Ex. B at p. 1, second paragraph.  Likewise, the Hoffman Letter clearly alleged that: (1) the anonymous employee "brought complaints to the Board of Directors regarding **gross mismanagement** and **gross waste** of federal funds," (2) Plaintiff "was a witness who provided evidence of your **gross mismanagement** and **gross waste** of federal funds;" and (3) Plaintiff and the anonymous employee were "fully prepared to begin the whistleblower process with HUD's Office of Inspector General."  Ex. A at p. 1, first paragraph; p. 2, first full paragraph. Neither the Hoffman Letter nor the HUD Final Determination referenced any allegations of fraud, the FCA, or any acts taken "in furtherance of" a *qui tam* action as required under § 3730(h)(1) of the FCA.  *See* Exs. A and B.

As stated in the HUD Final Determination letter, pursuant to Section 4712(c)(2) of the NDAA, Plaintiff has the right to proceed with a *de novo* action against Lutheran Manor under the NDAA in the United States District Court for the Eastern District of Pennsylvania within two years of the date of the HUD Final Determination.  *Id.* at p. 1, last paragraph.  However, rather than bring a *de novo* action in this Court under the NDAA – presumably because Plaintiff recognizes the futility in doing so given that HUD determined that the NDAA's whistleblower protections do not

apply to Lutheran Manor because its HAP contract with HUD predates the passing of the NDAA and has not been modified to incorporate the NDAA (Ex. B) – Plaintiff now attempts to recast her NDAA whistleblower claim as a retaliation claim under the FCA.  While retaliation for complaints of a **gross mismanagement** or **gross waste** of federal funds can be the basis for a whistleblower complaint under the NDAA (*see* 41 U.S.C. § 4712(a)), such complaints cannot be the basis of a retaliation claim under §3730(h)(1) of the FCA, which requires Plaintiff to plead facts showing that she made a whistleblower complaint that Lutheran Manor committed **"fraud against the government,"** defined as: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that is material, and (4) that causes the government to pay out money or to forfeit money that it is due. 837 F. App'x at 457.

In sum, Plaintiff's Complaint fails to plead sufficient facts that she or the anonymous employee made complaints of "fraud against the government" in furtherance of a *qui tam* action as required under § 3730(h)(1) of the FCA.  Instead, the factual allegations in the Complaint amount to the anonymous whistleblower making general claims of alleged "mismanagement" and "waste" of federal funds (*see* footnote 5, *supra*.), which was the basis of Plaintiff's NDAA whistleblower complaint filed with HUD OIG as shown in Exs. "A" and "B".  It is apparent that Plaintiff's Complaint before this Court feebly attempts to recast her HUD OIG whistleblower complaint under the NDAA regarding "mismanagement" and "waste" of federal funds as an FCA *qui tam* retaliation complaint regarding "fraud."  In so doing, the Complaint fails and must be dismissed.[6]

---

[6] Even if the Court excludes Exhibits "A" and "B" from its decision, the Court must still dismiss Plaintiff's Complaint under Rule 12(b)(6) because the Complaint's allegations of "making disclosures" to the HUD OIG as a witness in its investigation (Compl. ¶¶ 41, 47) nonetheless lack any detail regarding the "who, what, where, when and how," and fail to plead with particularity

## V.    <u>CONCLUSION</u>

In conclusion, the Complaint fails to allege any facts to establish "protected activity" taken by the anonymous employee or Plaintiff "in furtherance of" a *qui tam* action as required under 31 U.S.C. § 3730(h)(1).  Further, Plaintiff should not be granted leave to amend because doing so would be futile.  *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). For the reasons stated herein, Defendant requests this Court grant its Motion to Dismiss and issue an Order consistent with the proposed Order submitted herewith, dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,

**WARD LAW, LLC**

<u>*/s/ Christopher M. Curci*</u>
Christopher M. Curci, Esq. (309820)
Ward Law, LLC
One Penn Center
1617 JFK Blvd., Suite 500
Philadelphia, PA 19103
p: 215-647-6603
f: 267-350-8754
ccurci@thewardlaw.com
*Attorneys for Defendant,*
Date: <u>January 29, 2024</u>        *Lutheran Manor of the Lehigh Valley, Inc.*

---

that Plaintiff made disclosures of "fraud" as required by Rule 9(b).  *U.S. ex rel. Moore & Co., P.A.*, 812 F.3d at 306–07.

Likewise, the Complaint's allegations that Plaintiff made disclosures "in furtherance of a *qui tam* action" (Compl. ¶¶ 1, 47) and "assisted the government in investigating a False Claims Act claim" (¶ 42) are devoid of any factual support and nothing more than threadbare recitals of the cause of action. *Wheeler*, 639 Fed. Appx. at 149.