IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZENIA BROWNE, : | |
|         Plaintiff, : | |
| : | |
|         v. : | Civil No. 5:23-cv-04278-JMG |
| : | |
| LUTHERAN MANOR OF THE : | |
| LEHIGH VALLEY, INC. : | |
|         Defendants. : | |

**JOINT RULE 26(f) REPORT**

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred on April 12, 2024 and submit the following report of their meeting for the court's consideration:

**I.  Counsel**

    A.  Lead counsel for Plaintiff(s):    Steven E. Hoffman, Esq., Hoffman & Hlavac

    B.  Lead counsel for Defendant(s):    Christopher M. Curci, Esq., Ward Law, LLC

    C.  Counsel who participated in Rule 26(f) conference on behalf of Plaintiff(s):

        Steven E. Hoffman, Esq.
        Hoffman & Hlavac
        1605 North Cedar Crest Blvd., Ste. 517
        Allentown, PA 18104
        484-408-6001
        shoffman@hhe-law.com

    D.  Counsel who participated in Rule 26(f) conference on behalf of Defendant(s):

        Christopher M. Curci, Esq.
        Ward Law, LLC
        One Penn Center
        1617 John F. Kennedy Blvd.
        Suite 500
        Philadelphia, PA 19103
        215-647-6600
        ccurci@thewardlaw.com

**II.     Description of Claims and Defenses**

The Parties should assume that the Court has read the Complaint and is familiar with the claims. However, the facts supporting those claims and defenses are unknown. Therefore, counsel shall summarize the primary facts that the parties contend support their claims and defenses and the threshold legal issues. **<u>Counsel should not merely parrot their pleadings</u>**. In addition, the Parties should attach critical documents to this report for the Court to review, if not attached to the pleadings already (e.g., in a contract case, the document(s) comprising the contract; in a personal injury case, photographs of the scene, etc.).

**<u>For the Plaintiff</u>:**

Zenia Browne (hereinafter "Ms. Browne" or "Plaintiff") has made a claim of Retaliation in violation of 31 U.S.C. § 3730 ("Section 3730) of the False Claims Act based on Defendant's termination of her employment after Defendant perceived that she participated in complaints made to Defendant about issues relating to the mismanagement of federal funding by Defendant's Executive Director, Courtney Doheny. These perceived disclosures are protected under Section 3730 and Defendant's actions constitute whistleblower retaliation in violation of Section 3730. An investigation and subsequent report into this matter was conducted by the U.S. Department of Housing and Urban Development, Office of Inspector General ("OIG") in which Ms. Browne was a witness.

Defendant's most recent Housing Assistance Payments Contract (the "HAP Contract") with the U.S. Department of Housing and Urban Development ("HUD") began on April 1, 2010, for a period of twenty (20) years. Under the HUD Contract, Defendant received three and a half million dollars ($3,500,000.00) in total revenue in 2019 and 2020. Ms. Browne was hired by Defendant as an Administrative Assistant on June 5, 2019 where she reported directly to Defendant's Executive Director, Courtney Doheny, and was responsible for providing support for Defendant's rental office. An anonymous employee sent Defendant four anonymous emails on March 19, 2021, April 16, 2021, April 20, 2021, and May 3, 2021 outlining potential fraud that was being committed by Courtney Doheny as it related to the HUD Contract, residents of Defendant, Defendant's financial accounts and receipt filing, an outside contractor performing work for Defendant, and the data security of Defendant's employees.

On April 12, 2021, Defendant's Board met with Courtney Doheny to discuss the allegations of Fraud made against her. On April 21, 2021, Defendant's Board decided that the use of its credit

cards should be suspended and that an independent auditor should investigate the concerns raised in the first three anonymous emails. After the fourth anonymous email was sent by the anonymous employee, it is believed that the employee identified herself as the source of the anonymous emails to Defendant Board member, Bill Matz. On May 5, 2021, it is believed that Defendant Board members, Bill Matz and Ray Hittinger, met with the anonymous employee to discuss the concerns she had raised in her emails. Minutes from a May 12, 2021 Lutheran Manor Executive Committee meeting include a summary of this May 5, 2021 meeting and indicate that the discussion on that day addressed the concerns the anonymous employee raised in her first email.

On May 12, 2021, the Defendant's Board approved a motion for a third-party company to perform an independent audit of its credit card activity from January 2020 to April 2021, its corporate account usage and petty cash activity, and its use of the third-party contractor. On May 27, 2021, the Defendant's Board approved a motion to hire a private investigator to address the anonymous employee's concerns and to suspend Ms. Doheny during the investigation. After reviewing the reports submitted by the third-party audit company and the Private Investigator, Defendant's Board found that the allegations against Courtney Doheny were unfounded, and she was reinstated. Subsequently, the anonymous employee continued to make reports via email to Defendant regarding Courtney Doheny's retaliatory behavior towards her based on Ms. Doheny's knowledge that the anonymous employee was connected to the allegations made to Defendant.

In response to one of these report emails, a Defendant Board member sent the following email:

> My observation is that the stressful work environment is being created by resentment towards Ms. Doheny by the staff for their actions. They are the individuals who created the environment that they feel, not Ms. Doheny. It may be time to talk to both employees, tell them to knock it off, and/or suggest they look for jobs elsewhere. We may have to sweeten [the] pot to get them to leave, but we have all put way too much time into this, and we know their perspective is not correct.

In addition to this email, Courtney Doheny met separately with the anonymous employee who made the complaints and Ms. Browne and read from a pre-written script that stated that, although she knew that both employees had made the allegations about her to Defendant, she would not retaliate against them. However, on October 17, 2021, Ms. Doheny emailed the Defendant's Board to recommend that it terminate the employment of the anonymous employee and Ms. Browne and the Board subsequently approved the terminations. On November 5, 2021, Ms. Doheny provided Ms. Browne a memorandum stating that Defendant was terminating her employment and this memorandum clearly stated that Ms. Browne was terminated as a result of her perceived protected activity of reporting fraud and the mismanagement of government funds. Both Courtney Doheny and multiple Defendant Board members told the OIG that they thought that Zenia Browne was one of the sources of the allegations of fraud. The pertinent part of the November 5, 2021, memorandum states:

- Since the conclusion of the Board of Directors' investigation of your complaints earlier this year and my reinstatement, you have created an

uncomfortable work environment for your fellow employees with your behaviors and attitudes.

- You are clearly not satisfied working here following the Board's decision to retain me as Executive Director and Lutheran Manor has now decided that it is not interested in continuing its at-will employment relationship with you.

After her termination, Zenia Browne took part and acted as a witness in an OIG investigation where Defendant was investigated for the mismanagement and fraudulent use of government funds.

The above-mentioned facts display that Zenia Browne was perceived to have taken part in protected activity under both sections of prong one of the *prima facie* case of retaliation under Section 3730. Zenia Browne's perceived activity was protected because she placed the Defendant on notice of a possible *qui tam* action that could be brought against them, she participated in an investigation that could have led to a *qui tam* action against them, and she was perceived to have taken efforts to prevent Defendant from violating Section 3729 of the False Claims act relating to submitting or conspiring to submit false claims to the government.

**For the Defendant:**

As argued in Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Defendant asserts that Plaintiff's allegations, even if true, do not give rise to a retaliation claim under the False Claims Act. The workplace complaints by the anonymous whistleblower were not allegations of "fraud." Rather, at most, they were allegations of mismanagement or waste of funds. Many of the allegations were outright petty or absurd, such as Ms. Doheny "forcing" employees to walk her dog and clean up the dog's frequent messes in the building. Moreover, many of the anonymous whistleblower's allegations were knowingly false.

The true motivation behind the anonymous whistleblower's email was a blatant and defamatory character assassination of Ms. Doheny and her husband. The genesis of the anonymous employee and Plaintiff's disdain for Ms. Doheny occurred during the Covid pandemic in 2020, when Ms. Doheny required staff to alternate working weekends to clean Lutheran Manor. This work was seemingly below the anonymous employee and Plaintiff, who complained

incessantly, called it "bull," and said that she "had a college degree" and cleaning "was not in my job description." Plaintiff called Ms. Doheny "evil" and the anonymous employee said that she "was such a bitch." All of this occurred prior to the anonymous employee's "whistleblower" email in March 2021. The full extent of the maliciousness, frivolousness, baselessness, and knowingly falseness of the allegations against Ms. Doheny, her husband, and several other employees at Lutheran Manor cannot possibly be covered in this Rule 26(f) Report. (It's worth noting that, despite having over 200 elderly residents, Lutheran Manor did not have a single case of Covid-19 until December 2020).

Nonetheless, in response to the anonymous whistleblower's allegations in March 2021, Lutheran Manor's Board suspended Ms. Doheny pending an independent investigation. The Board retained a private investigator to interview every relevant employee, and a third-party accountant to review years' worth of financials. It was determined that the anonymous employee's allegations were unfounded and Ms. Doheny returned to work.

Upon her return to work, Plaintiff and the anonymous employee refused to accept the Board's decision, became discontented in the workplace, and created a generally unpleasant and hostile working environment. Even Lutheran Manor's onsite Chaplain commented that the office culture had noticeably changed and the employees were not happy anymore. The ultimate act of defiance and insult came on "Bosses Day," when Plaintiff and the anonymous employee refused to participate in the event, and instead sat and sulked in the corner by themselves. After three months of this type of behavior by Plaintiff and the anonymous employee, Lutheran Manor made the decision to terminate their employment.

### III. Stipulated Facts

The Parties **must stipulate to facts that are not in dispute**. In the interest of judicial economy and avoiding duplicative and/or unnecessary discovery, the Parties are required to identify and sign a stipulation outlining facts which they do not intend to dispute, although they are not required to identify disputed facts at this early stage.

1. Defendant is a non-profit affordable housing apartment community located in Bethlehem, PA, and is a recipient of federal Section 8 housing funds.
2. Plaintiff was employed by Defendant as an Administrative Assistant from on or about June 5, 2019, until Defendant terminated her employment on November 5, 2021.
3. Courtney Doheny has been Defendant's Executive Director since July of 2010.
4. Plaintiff reported to Ms. Doheny.
5. An anonymous employee sent Lutheran Manor's Board an anonymous email on March 19, 2021, which speaks for itself.
6. Lutheran Manor's Board hired a third-party investigator to investigate the allegations. The Board suspended Ms. Doheny during this investigation.
7. After reviewing the reports from the investigator, Lutheran Manor found the allegations against Ms. Doheny to be unfounded and she was reinstated.
8. On November 5, 2021, Lutheran Manor terminated the employment of Plaintiff and the anonymous employee.

### IV. Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the matter arises under the federal False Claims Act. Venue is proper because a substantial part of the events giving rise to the claim occurred in Lehigh County, Pennsylvania.

V. **Insurance Coverage and Deductibles**

Defendant has an insurance policy with the Cincinnati Financial Insurance Company that may be applicable to this matter. The retainer or deductible amount is $5,000.

VI. **Dispositive Motions**

Defendant has a pending Motion to Dismiss filed on February 23, 2024. Should the Court deny Defendant's Motion to Dismiss, Defendant may seek to file an interlocutory appeal. Should the Court deny Defendant's Motion to Dismiss, Defendant intends to file a Motion for Summary Judgment at the conclusions of fact discovery.

VII. **Anticipated Scope of Discovery**

A. Summarize with specificity those issues on which the Parties will need to conduct discovery. Identify categories of information each Party needs in discovery and why.

<u>Plaintiff:</u> Plaintiff will conduct discovery regarding the complaints made to Defendant, the investigations from the third-party investigators and HUD, Plaintiff's employment with Defendant and the decision to terminate Plaintiff's employment along with the anonymous complainant.

<u>Defendant:</u> Without limitation, Defendant will need to conduct discovery on the anonymous whistleblower's allegations, Plaintiff and the anonymous whistleblower's communications with the Office of Inspector General, Plaintiff's alleged damages, and Plaintiff's efforts to mitigate her alleged damages.

B. Anticipated number of interrogatories per Party:     <u>25</u>

C. Anticipated number of depositions per Party:     <u>10</u>

D. To the extent either Party proposes to exceed the presumptive limits in the Federal Rules of Civil Procedure for discovery, explain the basis for that proposal.

  E.  Do the Parties anticipate the need for any third-party discovery? If so, identify the likely third-parties and the discovery to be sought.

<u>Plaintiff:</u> Plaintiff will need to subpoena the records of the third-party investigators, depose the third-party investigators and submit a FOIA request to HUD.

<u>Defendant:</u> <u>Without limitation, HUD, the Office of Inspector General, Plaintiff's medical providers if Plaintiff intends to make a claim for emotional distress, Plaintiff's employment history.</u>

  F.  Do the Parties anticipate the need for experts? If so, identify the subjects on which the expert(s) may opine.

<u>Plaintiff:</u> None anticipated.

<u>Defendant:</u> Defendant may retain a vocational expert to render a professional opinion on Plaintiff's alleged compensatory damages for back pay and front pay, and Plaintiff's mitigation efforts, if any.

## VIII. Status of Discovery

The Parties must summarize the status of discovery to-date. State the parties' agreement on timing, form and scope of informal disclosures. Specifically identify not only the information listed in Rule 26(a)(1), but any additional information the parties agree to disclose informally. If nothing has been done in terms of discovery, the Parties should explain why. Keep in mind that self-executing discovery must not be delayed until the pretrial conference.

<u>Plaintiff:</u> Plaintiff anticipates serving paper discovery prior to the Rule 16 conference.

<u>Defendant:</u> Defendant respectfully requests that the Court stay discovery pending the outcome of Defendant's Motion to Dismiss Plaintiff's Amended Complaint filed on February 23, 2024.

## IX. Proposed Case Management Deadlines

When completing this section, the Parties should presume that the Court **will <u>not</u> bifurcate fact and expert discovery**. Therefore, the Parties should propose dates that take that presumption into account.

A. Deadline to serve initial disclosures under Rule 26(a)(1) (*must be exchanged at least one (1) business day before Rule 16 conference):   <u>April 24, 2024</u>.

B. Deadline to amend pleadings to add claims or Parties (*must be as early as practicable to avoid prejudice or unnecessary delays):   <u>May 15, 2024</u>.

C. Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any): <u>July 9, 2024 or 75 days from the Court's Order regarding Defendant's Motion to Dismiss, should the Motion be denied</u>.

D. Deadline for rebuttal expert reports (if any):  <u>August 3, 2024 or 100 days from the Court's Order regarding Defendant's Motion to Dismiss, should the Motion be denied</u>.

E. Deadline to complete **all** discovery (fact and expert, including expert depositions): <u>August 25, 2024 or 120 days from the Court's Order regarding Defendant's Motion to Dismiss, should the Motion be denied</u>.

F. If any Party seeks more than 120 days for discovery, explain why.

G. Deadline to file motion for summary judgment:  <u>October 25, 2024 or 60 days after fact discovery deadline due to anticipated large factual record.  Defendant requests 30 days for her response.</u>

H. Estimated trial ready date:  <u>March 1, 2025</u>.

I. Estimated Number of Days for Trial: <u>10</u>

X. **Deposition Scheduling**

The Court expects the Parties to meet and confer as soon as practicable to set aside dates to hold open for depositions before the close of discovery. If the Parties have not already done so, the Court will order the Parties to do so within two weeks of the Rule 16 conference.

Have the Parties set aside dates for deposition?  ___ Yes  X No

If yes, what are those dates?  _____

If no, when do the parties intend to confer, and how many dates do they intend to set aside?

<u>Depends on the Court's decision regarding whether Your Honor will stay discovery pending Defendant's Motion to Dismiss.</u>

## XI. Electronic Discovery

The parties agree that PDF format of electronic documents is acceptable.

## XII. Protective Orders and Confidentiality Agreements

None anticipated at this time.

## XIII. Alternative Dispute Resolution

A. Have the Parties engaged in any settlement discussions? If so, set forth the status of those negotiations. If not, explain why not.

  i. The parties engaged in pre-Complaint informal settlement discussions that did not result in resolution.

B. Have the Parties explored or considered other forms of alternative dispute resolution? If so, summarize those efforts. If not, state the Parties' positions with respect to ADR, as required under Local Rule of Civil Procedure 53.3.

  i. The parties have not previously explored ADR but are open to ADR in this matter.

      C.  Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement. Plaintiff, Zenia Browne, and Executive Members of Lutheran Manor Board

XIV.  **Consent to Send Case to a Magistrate Judge**

The parties respectfully do not consent to a Magistrate Judge for this matter.

XV.  **Policies and Procedures**

Judge Gallagher's Policies and Procedures are available for the Parties to review on the Court's website. By signing below, counsel for each Party and/or each *pro se* Party represents that he or she has reviewed the Judge's Policies and Procedures and acknowledges the requirements contained therein. The Parties and their counsel further acknowledge by signing below that Judge Gallagher will strike pleadings and other submissions that do not comply with his Policies and Procedures.

XVI.  **Other Matters**

None at this time.

**ACKNOWLEDGEMENT OF RULE 26(F) MEETING AND THE ABOVE SUBMISSION TO THE COURT:**

| | |
|---|---|
| _/s/ Steven E. Hoffman_ | _/s/ Christopher M. Curci_ |
| Steven E. Hoffman, Esq. (63911) | Christopher M. Curci, Esq. (309820) |
| Hoffman & Hlavac | Ward Law, LLC |
| 1605 North Cedar Crest Blvd., Ste. 517 | 1617 John F. Kennedy Blvd., Suite 500 |
| Allentown, PA 18104 | Philadelphia, PA 19103 |
| 484-408-6001 | 215-647-6600 |
| shoffman@hhe-law.com | ccurci@thewardlaw.com |